This is a suit under the Workmen's Compensation Act, No. 20 of 1914, as amended. The lower court rendered the following written opinion:
"This is a case where the plaintiff brings suit under the compensation act for total permanent disability, due to alleged injury, which he claims was received as a result of an accident which occurred during the course of his employment by the defendant.
"The testimony disclosed that the plaintiff was in the employ of the defendant and that the alleged accident occurred while the plaintiff, together with other employees, was engaged in moving an ice box for the defendant at a local dairy; that while they were pushing the ice box on the wet floor of the dairy, they reached a portion of the floor which was not wet, which acted as a brake on the ice box and it suddenly stopped its motion with the result that the plaintiff and the other employee who were pushing, suddenly stopped and collided with the box. The testimony shows that this plaintiff suffered a bruised area of his chest and lower side and that he was treated for same by Dr. C.U. Johnson. The testimony further shows that he has done no work since that time.
"There is some testimony in the record as to the undercover work of a so-called colored detective. This testimony proves only one thing to the court: That was that the so-called detective and the plaintiff and two colored women engaged in a journey from Monroe to Alexandria and back to Winnfield over the public highway, as the plaintiff put it himself, — `riding in a car and drinking liquor' (whiskey). In other words, the uncontradicted testimony offered by the plaintiff in that respect shows that the car was operating on gasoline and the colored men seem to have been operating on liquor. As for the facts brought out in the alleged changing of the tire, the court feels that such testimony would prove nothing one way or the other, as to the injury and is of a type of testimony that the court would not want to accept unless it were above reproach, taking the jurisdictional broadness of private detective work in most cases, and in this particular case, the colored party who was the dark-skinned detective, failing to appear as a witness and was not put on the stand as a witness. As stated above, the fact that this plaintiff changed an automobile tire or attempted to change one, in the opinion of the court, would have no probative value as to showing that the plaintiff was able to work for the reason that the compensation law contemplates his being able to work without pain, and people might have to change a tire on a car, or do other things which caused great pain at the time being or thereafter. What the court means is an isolated incident would have no probative value one way or the other. *Page 578 
"The court listened with a great deal of interest to the testimony of the doctors as to the X-rays, and there can be no doubt that these X-ray pictures disclose an unusual condition, because they disclose first that this man has what might be determined an extra rib. As far as the medical testimony goes, the court feels that this case was fully covered after Dr. Mosley had testified for the plaintiff, and for that reason, the court declined the offering of having an independent doctor selected by the court to make an examination, this offering having been made by the defendant. Dr. Mosley testified that this man had been his patient; that he had examined him for treatment, not for this case; and that he had treated him on prior occasions; that on a prior occasion he had received a blow on the chin which caused a fracture of his neck and in one of the X-ray pictures he pointed out that fracture. He also pointed out the injury which he had found on a prior examination to one of the transverse processes of one of the vertebra. He stated that on his last examination by X-ray, he found injury to the opposite transverse process of the same vertebra. Dr. Mosley testified that he found one of the vertebra had narrowed or was crushed, a typical example of textbook pictures or picture used in illustrating Kummel's Disease. Dr. Graves testified that he had treated this man and had examined him some time, a year before this alleged accident, for an accident at the Brown Paper Mill and that the abnormality of the lower spine, which he referred to as an arthritic condition, was present at that time. Several of the doctors commented on the curvature of the spine.
"The court has gone into detail for the reason that he wished to show that all of the medical testimony showed that these X-ray pictures disclosed what really would be an abnormal condition in regard to an ordinary man both as to the formation, including the extra rib, and the condition of the vertebra. As stated above, the testimony of both Dr. Mosley and Dr. Graves showed that this man had received injuries on previous occasions.
"In view of the facts in this case, the court feels that there seems to be no question that this man does not have a normal spine; that is, that there has been injury to it but, from this evidence, the court is not prepared to say that that injury arose from the accident which it is claimed caused injury in this particular case. There are no facts in the case, as the court sees it, which would show that the condition of this defendant's (plaintiff's) spine was caused at the time that he received the contusion of his chest and side when he was pushing this ice box. In other words, while the law is liberal as to compensation cases, it is still the law that the burden is upon the plaintiff to make out his case by a preponderance of testimony and the court does not think that this testimony shows by even a preponderance of testimony that the condition of which he complains was caused by and at the time of this alleged accident.
"For this reason, the court thinks there should be judgment in favor of the defendant, rejecting plaintiff's demand at his cost."
Our interpretation of the above opinion is that the lower court found plaintiff totally disabled, but rejected his demands for the reason given that he had not shown by a preponderance of the evidence that his present disability was caused by the accident which occurred while he was in the employ of defendant. The medical testimony in regard to the effect of the last injury on plaintiff's condition is as conflicting as it usually is when doctors for the plaintiff and doctors for the defendant meet in a court room. There is no doubt that the condition of plaintiff's back at the time of the accident caused it to be more susceptible to damage from such an accident than it would have been had it been a normal back. It also shows conclusively that plaintiff was suffering from gonorrhea and prostatic trouble, which would cause any back injury to be longer in healing than it would if he did not have these infections.
Immediately after the occurrence of the accident, plaintiff complained that he had hurt himself and although he tried to continue with the work, he was soon thereafter forced by pain to cease work and report the accident to his superior who sent him to defendant's doctor for treatment. He was under this doctor's care from October 9th through November 12th, 1941. This doctor diagnosed plaintiff's injuries as contusions and sprains of the back. The treatment given was the application of heat and immobilization with adhesive, with Codine and Sedadine capsules to relieve the pain. This doctor testified that at the end of the thirty-four days of treatment, plaintiff was in the same condition as he was when he first saw him. He further testified that *Page 579 
plaintiff was off from work and, under his treatment, although not hospitalized for thirty-four days, which was sufficient time for any ordinary contusion of the muscles of the back to heal, and that the X-ray showed no bone injury, but did show other trouble which preceded the injury. Plaintiff protested when discharged at the end of the thirty-four days and told the doctor he was not able to go back to work. Plaintiff then consulted another doctor. He has not worked since the accident and swears he is unable to do so on account of the pain his injuries cause him.
Plaintiff had been working extra for defendant and had been doing so for a number of months. His wages were 25 cents per hour and he worked sometimes three days a week, and some weeks put in seven days. On some days plaintiff only worked a few hours, depending entirely upon the need for him by his employer. It is our opinion his rate of compensation, if he is entitled to any, would be 65% of $10 per week, being on an 8-hour day for a 5-day week, or forty hours per week, a total of $6.50, of which his attorney will receive 20% leaving him $5.20 per week.
It is unreasonable to suppose any one would be willing to cease working during the present time when jobs are plentiful and wages high, for the sole purpose of receiving so small an amount of compensation.
It is evident from the testimony of the defendant's doctor and witness that plaintiff did receive an injury to his back in the accident alleged upon, and we are convinced the prior condition of his back caused what might have been a slight injury to be a serious one and the infection from the prostate and gonorrhea has caused the injury to persist. The testimony is that plaintiff performed his work well before the time of the accident and made no complaint of pain. We are impressed with the fact that plaintiff has never attempted to exaggerate his injuries, although he claims he was in pain but always walked to the doctor's office for treatment. He has never pretended to be unable to get about.
We are satisfied in our mind that plaintiff is still suffering from the injuries received or exaggerated by the accident which occurred while he was in defendant's employ, and that at the time of trial, he was unable to perform ordinary manual labor and therefore is entitled to receive compensation.
It is therefore ordered, adjudged and decreed that the judgment of the lower court is reversed and that plaintiff, Johnnie Johnson, have judgment against defendants, Otto Passman, doing business in the name of the passman Equipment Company, and the Travelers' Insurance Company, in the sum of $6.50 per week for a period of disability not to exceed four hundred weeks, beginning with October 9, 1941, with 5 per cent per annum interest on each weekly payment from due date until paid; and for all costs of this suit.